DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. CROIX

**RONALD E. GILLETTE,**

      **Plaintiff,**

      v.

**DIANE PROSPER, warden of the Golden Grove Adult Correctional Facility, in her individual and official capacities; JULIUS WILSON, Director of the Virgin Islands Bureau of Corrections, in his individual and official capacities; TERRITORY OF THE VIRGIN ISLANDS,**

      **Defendants.**

Civil Action No. 2014-00110

**Attorneys:**
**Joseph A. DiRuzzo, III, Esq.,**
Miami, FL
    *For Plaintiff*

**Shari N. D'Andrade, Esq.,**
St. Croix, U.S.V.I.
    *For Defendants*

## MEMORANDUM OPINION AND ORDER

**Lewis, Chief Judge**

    THIS MATTER comes before the Court on Plaintiff Ronald Gillette's "Motion to Convene Three Judge Panel" (Dkt. No. 16) under 18 U.S.C. § 3626 of the Prison Litigation Reform Act ("PLRA"). Defendants filed their collective "Opposition to Motion to Convene Three Judge Panel & Incorporated Memorandum of Law in Support" (Dkt. No. 26), and Plaintiff filed his "Reply to Defendants' Opposition to Motion to Convene Three Judge Panel" (Dkt. No. 29). For the reasons discussed below, Plaintiff's Motion will be denied.

## I. BACKGROUND

Plaintiff initiated this case on December 16, 2014, by filing a Complaint that was subsequently amended on March 3, 2015. (Dkt. Nos. 1, 13). The Amended Complaint, which spans 84 pages, 567 paragraphs, and 22 counts, alleges claims under 42 U.S.C. § 1983, *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388 (1971), Section 504 of the Rehabilitation Act, and the Americans with Disabilities Act ("ADA"). Plaintiff—who is currently incarcerated at Golden Grove Adult Correctional Facility ("Golden Grove") on St. Croix, U.S. Virgin Islands—alleges that "he is being subjected to cruel and unusual punishment due to the failure to provide constitutionally mandated medical and mental health treatment, and for being subject to the deplorable conditions of Golden Grove, which also violates the ADA." (Dkt No. 13 at ¶ 3). Specifically, the Amended Complaint contains the following counts: Counts 1-5 (denial of adequate medical care); Counts 6-10 (failure to protect from attack); Counts 11-15 (inadequate training or supervision); Counts 16-20 (failure to protect from suicidal action); and Counts 21 and 22 (violations of the ADA and Rehabilitation Act). Plaintiff requests that the Court issue an order: (1) declaring that the conditions at Golden Grove violate the Eighth Amendment of the U.S. Constitution, 48 U.S.C. § 1561, and the ADA; (2) awarding Plaintiff compensatory damages for the alleged violations of his constitutional and statutory rights; and (3) granting injunctive relief discharging Plaintiff from detention or, in the alternative, transferring Plaintiff to another facility that comports with the Eighth Amendment, 48 U.S.C. § 1561, and the ADA.

Plaintiff's claims regarding denial of adequate medical care, failure to protect from suicidal action, and violations of the ADA and Rehabilitation Act (Counts 1-5, 16-22) are particularized in that the Amended Complaint contains allegations that are specific to Plaintiff (*e.g.*, Plaintiff has a brain cyst, a history of suicidal ideation, and "heat-sensitive disabilities"). (*Id.* at ¶¶ 50, 60, 547).

However, relative to the length of the Amended Complaint, these particularized factual allegations are sparse.

Plaintiff's remaining claims (Counts 6-10—failure to protect from attack, and Counts 11-15—inadequate training or supervision) are inextricably intertwined with the litigation between the United States and the Virgin Islands regarding the conditions of Golden Grove (*United States of America v. Territory of the Virgin Islands, et al.*, Civ. No. 1986-0265 (D.V.I.)) (the "Golden Grove Litigation"). In that case, which was initiated in 1986, the United States brought suit against the Government of the Virgin Islands pursuant to the Civil Rights of Institutionalized Persons Act ("CRIPA"), 42 U.S.C. § 1997, alleging that the inmates at Golden Grove were being deprived of their constitutional rights under the Eighth Amendment. *See generally United States v. Territory of the Virgin Islands*, 884 F. Supp. 2d 399, 404-05 (D.V.I. 2012); *see also United States v. Territory of Virgin Islands*, 748 F.3d 514, 520 (3d Cir. 2014).[1] The result of that litigation is reflected in a Settlement Agreement that was entered as an Order of the Court on May 14, 2013 (the "2013 Order"), which calls for extensive systemic changes at Golden Grove in the areas of safety and supervision, medical and mental health care, fire and life safety, and environmental health and safety. Order, *United States v. Territory of the Virgin Islands*, Civ. No. 1986-265 (D.V.I. May 14, 2013) (Dkt. No. 742). As part of the Settlement Agreement, the Court also appointed a Monitor on June 19, 2013, who—together with his team—lends expertise to the reform effort and provides quarterly reports on Golden Grove's compliance with the Settlement Agreement. Order, *Territory of the Virgin Islands*, Civ. No. 1986-265 (D.V.I. June 19, 2013) (Dkt. No. 750).[2]

---

[1] Under CRIPA, the United States is authorized "to pursue civil rights actions on behalf of prisoners who are suffering deprivations of their constitutional rights." *Territory of Virgin Islands*, 748 F.3d at 520; *see also* 42 U.S.C. § 1997a.

[2] Prior to the 2013 Order, the Court had entered several other Orders including a 1986 Consent Decree, a 1990 Plan of Compliance, a 2003 Stipulated Agreement, and a 2007 Remedial Order.

The close connection between the Golden Grove Litigation and Plaintiff's current claims is evident in the extent to which the claims follow the terms of the Settlement Agreement embodied in the 2013 Order. It is also evident from the fact that Plaintiff's Amended Complaint herein contains more than 16 pages of quotations taken directly from the Golden Grove Litigation monitoring reports, but includes relatively few facts specific to Plaintiff. (Dkt. No. 13).

The claims Plaintiff advances in the Amended Complaint are also similar to the claims he raised when he attempted to intervene in the Golden Grove Litigation. *See Territory of Virgin Islands*, 748 F.3d 514. There, Plaintiff argued that he should be permitted to intervene because, as a prisoner of Golden Grove, he has a cognizable interest in the subject of the Golden Grove Litigation. *Id.* at 518. This Court's denial of the motion to intervene was affirmed by the Third Circuit on the grounds, *inter alia*, that Plaintiff's interests were already adequately represented by the United States because, as an inmate of Golden Grove, he is "the 'exact constituent' the United States is attempting to protect in [the Golden Grove Litigation]." *Id.* at 523-24 (quoting *United States v. City of Los Angeles*, 288 F.3d 391, 402 (9th Cir. 2002)). In so holding, the Third Circuit noted the extensive overlap between Plaintiff's claims and the existing claims of the United States:

> In articulating his asserted interests in this case, Gillette's memorandum in support of the motion to intervene demonstrates a substantial overlap between his interests and those of the United States. Specifically, Gillette extensively quotes from the United States' pleadings in this case . . . .
>
> . . . .
>
> This reliance upon the United States' pleadings belies Gillette's argument that his interests diverge from those of the United States. In fact, as discussed above, his grievances dovetail with the terms of the Settlement Agreement in this case. To that

---

*Territory of the Virgin Islands*, 884 F. Supp. 2d at 404-06. However, in February 2012, the Court terminated each of its prior Orders that imposed prospective relief because each Order failed to satisfy the requirements of the PLRA. *Id.* at 413. Following the Court's termination of the prior Orders, the parties in the Golden Grove Litigation prepared to proceed to trial. The need for a trial was averted in 2013 when the parties entered into the Settlement Agreement. *See Territory of Virgin Islands*, 748 F.3d at 518.

4

end, Gillette's interests not only overlap with those of the United States, they are essentially identical.

*Id.* at 521-22. Here, as in his motion to intervene in the Golden Grove Litigation, Plaintiff's claims closely dovetail with the terms of the Settlement Agreement.

Shortly after submitting his Amended Complaint in this case, Plaintiff filed the instant Motion asking the Court to convene a three-judge court pursuant to 18 U.S.C. § 3626 of the PLRA. (Dkt. No. 16 at 6). In his Motion, Plaintiff asserts that his requested relief to be released from Golden Grove or transferred to another facility constitutes a "prisoner release order" under the PLRA, which can be issued only by a three-judge court. (*Id.* at 6-7). In their Opposition, Defendants assert that Plaintiff's case does not meet the prerequisites for convening a three-judge court and, therefore, Plaintiff's Motion should be denied. (Dkt. No. 26 at 3-5).[3]

## II.   APPLICABLE LEGAL PRINCIPLES

The PLRA imposes certain restrictions on a court's ability to enter a "prisoner release order," which the PLRA defines as "any order, including a temporary restraining order or preliminary injunctive relief, that has the purpose or effect of reducing or limiting the prison population, or that directs the release from or nonadmission of prisoners to a prison." 18 U.S.C. § 3626(g)(4). Most significantly, a prisoner release order "shall be entered only by a three-judge court in accordance with [28 U.S.C. § 2284]." *Id.* § 3626(a)(3)(B). To convene a three-judge court, the party seeking a prisoner release order must file "materials sufficient to demonstrate" that two prerequisites have been satisfied. *Id.* § 3626(a)(3)(C). First, the party seeking the prisoner release order must demonstrate that "a court has previously entered an order for less intrusive relief that

---

[3] After Plaintiff filed the present Motion, Defendants filed a "Motion for Judgment on the Pleadings & Incorporated Memorandum of Law" (Dkt. No. 27). For purposes of the present analysis, the Court assumes—without deciding—that Plaintiff's claims can survive Defendants' motion for judgment on the pleadings. The merits of Defendants' motion for judgment on the pleadings will be addressed by future Order of the Court.

has failed to remedy the deprivation of the Federal right sought to be remedied through the prisoner release order." *Id.* § 3626(a)(3)(A)(i). Second, the party must demonstrate that "the defendant has had a reasonable amount of time to comply with the previous court orders." *Id.* § 3626(a)(3)(A)(ii). Unless both of these prerequisites are satisfied, the PLRA's requirement to convene a three-judge court is not triggered.

### III. ANALYSIS

"Plaintiff moves for this Court to convene a three-judge court . . . to consider whether Plaintiff must be released/discharged (or transferred) from Golden Grove to remedy the continuous Eighth Amendment violations in this matter." (Dkt. No. 16 at 6).[4] To succeed on his Motion, Plaintiff must demonstrate that the two prerequisites for a three-judge court under the PLRA have been satisfied. 18 U.S.C. § 3626(a)(3)(C). To this end, Plaintiff directs the Court's attention to the Golden Grove Litigation, upon which he relies for the proposition that the PLRA's requirement to convene a three-judge court is triggered in the instant matter. As set forth below, this premise is flawed as to all of Plaintiff's claims.

### A. Denial of Adequate Medical Care, Failure to Protect from Suicidal Action, and Violations of the ADA and Rehabilitation Act

With regard to Counts 1-5 (denial of adequate medical care), Counts 16-20 (failure to protect from suicidal action), and Counts 21 and 22 (violations of the ADA and Rehabilitation Act) the Court finds that Plaintiff has failed to satisfy the first prerequisite for a three-judge court,

---

[4] For purposes of this analysis, the Court will assume—without deciding—that Plaintiff's request for a transfer or release of a single prisoner falls within the statutory definition of a "prisoner release order." It is unnecessary for the Court to definitively decide this issue here because—even assuming that Plaintiff's request constitutes a prisoner release order—the prerequisites for a three-judge court have not been satisfied.

6

in that he has not demonstrated that there is a prior order for less intrusive relief that has failed to remedy the deprivation of the federal right that Plaintiff seeks to remedy.

Regarding his claims for denial of adequate medical care, Plaintiff asserts that he is suffering "from various physical ailments pre-dating his confinement, including an injury to his brain that resulted in the growth of a cyst." (Dkt. No. 13 at ¶ 50). Plaintiff points to statements made by an examining physician who concluded that he should "be placed in an institution where he receives full medical, psychiatric and neurological evaluation in order to assess brain functioning which has not been addressed since the removal of the shunt to alleviate the pressure from a brain cyst." (*Id.* at ¶ 58). Plaintiff asserts that despite his medical condition, since being incarcerated at Golden Grove he "has yet to receive medical treatment in connection with [his] brain cyst]" (*id.* at ¶ 52), and therefore argues that Defendants are "deliberately indifferent to [his] serious medical needs" in violation of the Eighth Amendment and 48 U.S.C. § 1561, (*id.* at ¶ 309).

Plaintiff's claims for failure to protect from suicidal action are similar to his claims of denial of adequate medical care. Plaintiff notes that his medical records from the Metropolitan Detention Center in Guaynabo, Puerto Rico reflect that he has a history of suicidal ideation and was placed on suicide watch in 2007 after ingesting a series of pills. (*Id.* at ¶ 60). Based on this assertion, Plaintiff alleges that he has a "particular vulnerability to suicide" to which Defendants are deliberately indifferent in violation of the Eighth Amendment and 48 U.S.C. § 1561. (*Id.* at ¶¶ 493-94).

Finally, for Plaintiff's claims under the ADA and Section 504 of the Rehabilitation Act, Defendant asserts that he has "heat-sensitive disabilities" and was "excluded from participation in or denied the benefits of Golden Grove's services, programs, or activities . . . because of [his] disability." (*Id.* at ¶¶ 543-44, 547, 557-58, 562). Based on this assertion, Plaintiff argues that

"Golden Grove fails and refuses to reasonably accommodate [him] while in custody," in violation of both the ADA and Section 504 of the Rehabilitation Act. (*Id.* at ¶¶ 550, 565).

While Plaintiff maintains that "[t]he previous court orders entered in the Golden Grove [L]itigation were meant to remedy the same deprivations complained of in this case," (Dkt. No. 29 at 5), the Court disagrees as it pertains to Counts 1-5, 16-20, and 21-22. In contrast to his particular needs as reflected in those Counts, Plaintiff has failed to demonstrate how the Court's 2013 Order in the Golden Grove Litigation encompasses anything other than broad, systemic improvements at Golden Grove. (*See* Dkt. No. 16-1 at 9-11 (2013 Settlement Agreement requiring the defendants in the Golden Grove Litigation to develop facility-specific policies aimed at systemic reform)).[5] Allegations that Defendants are deliberately indifferent to Plaintiff's medical needs—arising from his brain cyst or his particular vulnerability to suicide—are discrete from systemic failures to provide adequate medical services within Golden Grove. Likewise, allegations that Defendants are failing to reasonably accommodate Plaintiff's "heat-sensitive disabilities" are discrete from systemic failures in the areas of environmental health and safety. Thus, Plaintiff's attempt to bring his personal claims that relate to him alone within the scope of the systemic reforms ordered in the Golden Grove Litigation must fail.

In reaching this conclusion, the Court finds the Ninth Circuit's decision in *Pride v. Correa*, 719 F.3d 1130 (9th Cir. 2013) to be instructive. In *Pride*, a *pro se* prisoner brought an action under 42 U.S.C. § 1983 against officials and employees of a California prison alleging that, due to pre-incarceration injuries, he required a special mattress and knee brace, and that defendants were acting with deliberate indifference toward his serious medical needs by refusing to provide either.

---

[5] As discussed in Section III(B) below, while Plaintiff seeks to rely on all of the Court's Orders in the Golden Grove Litigation, the only operative Order is the Court's May 14, 2013 Order, which embodies the parties' Settlement Agreement governing the defendants' remedial actions at Golden Grove.

*Id.* at 1132. The defendants moved to dismiss the prisoner's claims on the basis that they were duplicative of the claims brought in a pending class action involving all California prisoners with serious medical needs. *Id.* at 1133, 1134. The Ninth Circuit reversed the district court's dismissal of the suit, holding that the prisoner's claim concerning his individual medical care was not duplicative of the class action. *Id.* at 1138-39. The Ninth Circuit acknowledged that the class action sought "systemic reform of medical care in the California prisons" and that the court-approved stipulation required the defendants in the class action "to implement various systemic changes such as increasing medical staff." *Id.* at 1136. However, the Ninth Circuit nonetheless held that the prisoner's individual claims for medical care were discrete:

> Individual claims for injunctive relief related to medical treatment are discrete from the claims for systemic reform addressed in [the class action]. Consequently, where an inmate brings an independent claim for injunctive relief solely on his own behalf for medical care that relates to him alone, there is no duplication of claims or concurrent litigation. Thus, we conclude that where a California prisoner brings an independent claim for injunctive relief solely on his own behalf for specific medical treatment denied to him, [the class action] does not bar the prisoner's claim for injunctive relief.

*Id.* at 1137.

The Court finds the Ninth Circuit's reasoning in *Pride* to be persuasive under the circumstances here. Plaintiff is bringing an independent claim for injunctive relief based on specific medical treatment allegedly denied to him and the alleged failure of Defendants to reasonably accommodate his "heat-sensitive disabilities." This stands in sharp contrast to the Court's 2013 Order which is aimed at systemic reform, *inter alia*, of Golden Grove's healthcare services and conditions relating to environmental health and safety. Contrary to Plaintiff's assertions, as to Counts 1-5, 16-20, and 21-22, the two cases do not address "the same deprivation[]" of Federal rights.

The underlying purpose of the PLRA further supports the Court's conclusion. "[T]he animating purpose of the PLRA, [is] to restrict the authority of federal courts to issue and enforce compliance with orders for prospective relief, and thus to curb the involvement of the federal judiciary in prison management." *Territory of the Virgin Islands*, 884 F. Supp. 2d at 408 (citing *Gilmore v. California,* 220 F.3d 987, 991 (9th Cir. 2000) ("It is clear that Congress intended the PLRA to revive the hands-off doctrine," the former "rule of judicial quiescence" that the federal judiciary not be involved with the problems of state-run prisons.)). This is especially true of injunctive relief that constitutes a prisoner release order, which can be entered only by a three-judge court and only after an order for less intrusive relief has failed—within a reasonable period of time—to correct the deprivation of the Federal right. Under the PLRA, a prisoner release order is "the remedy of last resort." *Coleman v. Schwarzenegger*, 922 F. Supp. 2d 882, 889 (E.D. Cal. 2009) (quoting H.R. Rep. No. 104-21, at 25 (1995) (report of the House Committee on the Judiciary on the Violent Criminal Incarceration Act of 1995)); *see also Brown v. Plata*, 563 U.S. 493, 131 S. Ct. 1910, 1930 (2011) (noting that prerequisites for convening a three judge court "ensure that the 'last resort remedy' of a population limit is not imposed 'as a first step.'") (quoting *Inmates of Occoquan v. Barry*, 844 F.2d 828, 843 (D.C. Cir. 1988)).

Plaintiff's attempt to convene a three-judge court under the circumstances here would run counter to the spirit of the PLRA by circumventing any meaningful opportunity for Defendants to comply with an order, if appropriate, for less intrusive relief designed to address the particular alleged Federal rights which Plaintiff claims have been violated. The 2013 Order was neither aimed at remedying Plaintiff's particular medical needs or disabilities nor fashioned to be "less intrusive" than the prisoner release order that Plaintiff now seeks for himself. While the 2013 Order approving the parties' Settlement Agreement calls for broad, systemic reform and the development and implementation of new policies, Plaintiff's alleged deprivation of a Federal right regarding his

medical needs—if the claim survives and is proven—could arguably be remedied simply by a "full medical, psychiatric and neurological evaluation" for himself and any appropriate follow up care, including suicide-prevention measures. (*See* Dkt. No. 13 at ¶ 50). Similarly, Plaintiff's alleged deprivation of a Federal right regarding his "heat-sensitive disabilities"—if the claim survives and is proven—could seemingly be remedied by reasonable accommodations fashioned specifically for Plaintiff.[6] Thus, Plaintiff has not—and cannot—point to a previous order for less intrusive relief that has failed to remedy the deprivation of the alleged Federal right for which he currently seeks a prisoner release order.[7]

Because the first prerequisite has not been satisfied, Plaintiff's claims regarding denial of adequate medical care (Counts 1-5), failure to protect from suicidal action (Counts 16-20), and violations of the ADA and Section 504 of the Rehabilitation Act (Counts 21-22) do not trigger a three-judge court under the PLRA.

### B. Failure to Protect from Attack and Inadequate Training or Supervision

The Court finds that Plaintiff's claims for failure to protect from attack (Counts 6-10) and inadequate training or supervision (Counts 11-15) are likewise inappropriate for a three-judge

---

[6] Moreover, in the Golden Grove Litigation, the United States is not attempting to remedy violations of the ADA or Section 504 of the Rehabilitation Act. Indeed, under CRIPA (the statute authorizing the United States to bring the Golden Grove Litigation) the equitable relief that the United States may seek for persons confined to a prison or correctional facility is limited to the "rights, privileges, or immunities secured or protected by the Constitution of the United States." 42 U.S.C. § 1997a(a).

[7] There has been no prior order establishing that Plaintiff's particular allegations regarding the lack of treatment for his brain cyst, the failure to protect against suicide, and the failure to reasonably accommodate his "heat-sensitive disabilities," are, in fact, deprivations of a Federal right. Pursuant to the plain language of the PLRA, when a party moves for a prisoner release order, a constitutional violation requiring relief has already been established: "a court has previously entered an order for less intrusive relief that has failed to remedy *the deprivation of the Federal right* sought to be remedied." 18 U.S.C. § 3626(a)(3)(i) (emphasis added). This provision makes no mention of an *alleged* deprivation of a Federal right or a deprivation of a Federal right that a party seeks to establish.

11

court at this juncture—albeit for a different reason. Unlike Plaintiff's allegations of his particular medical needs and vulnerability to suicide, these Counts include virtually no facts specific to Plaintiff. Rather, Plaintiff's Amended Complaint is composed of more than 25 pages of direct quotations from the monitoring reports in the Golden Grove Litigation, newspaper articles, and other sources generally describing the conditions at Golden Grove. Because these claims are directed at the general policies and conditions of Golden Grove, they fall within the scope of the 2013 Order. As such, they satisfy the first prerequisite for triggering the three-judge court, in that the 2013 Order constitutes an order for less intrusive relief that has failed to remedy the deprivation of Federal rights that Plaintiff's prisoner release order seeks to remedy.[8] Nonetheless, the Court concludes that these claims do not satisfy the PLRA's second requirement for a three-judge court because the defendants have not had a reasonable amount of time to comply with the 2013 Order.

In arguing that the defendants have had a reasonable amount of time, Plaintiff points to the "host of orders" issued throughout the history of the Golden Grove Litigation and specifically the 1986 Consent Decree, the 1990 Plan of Compliance, the 2003 Stipulated Agreement, the 2007 Remedial Order, the December 2009 Order, the February 2010 Order, the December 2010 Order, and the 2013 Order. (Dkt. No. 16 at 8). Plaintiff asserts that because "the first 'order' was issued

---

[8] As noted earlier, the first prong of the statutory provision that triggers the three-judge court requires that "a court has previously entered an order for less intrusive relief . . . ." 18 U.S.C. § 3626(a)(3)(A)(i). Defendants argue that there has been no previous order for less intrusive relief because "this Court has not entered any order *in this case* related to Plaintiff's claims." (Dkt. No. 26 at 4 (emphasis in original)). However, Plaintiff correctly notes that the PLRA does not require "that '*the court*' or '*the same court*' have previously entered an order." (Dkt. No. 29 at 4 (emphasis in original)). Under the plain language of the statute, the fact that a court has entered the relevant order in a different case does not disqualify that order for purposes of satisfying the first prerequisite. *Cf. Warner-Lambert Co. v. Apotex Corp.*, 316 F.3d 1348, 1356 (Fed. Cir. 2003) ("It is a rule of law well established that the definite article 'the' particularizes the subject which it precedes. It is a word of limitation as opposed to the indefinite or generalizing force of 'a' or 'an.'") (quoting *Am. Bus Ass'n v. Slater*, 231 F.3d 1, 4-5 (D.C. Cir. 2000) (quotations omitted)). Thus, the Court rejects Defendants' arguments to the contrary.

in 1986" the defendants have had almost three decades to comply with the Court's orders. (*Id.* at 8-9).

Significantly, however, Plaintiff gives short shrift to the Court's February 2012 Memorandum Opinion and Order (*see id.* at 3 n.2-3) in which—pursuant to 18 U.S.C. § 3626(b)(2)—the Court terminated all of its previous Orders imposing prospective relief, *Territory of the Virgin Islands*, 884 F. Supp. 2d at 413. Specifically, the Court concluded in its February 2012 Opinion that "none of this Court's Orders containing prospective relief—the 1986 Consent Decree, the 1990 Plan of Compliance, the 2003 Stipulated Agreement, or the May 2007, December 2009, February 2010 or December 2010 Orders—contain the requisite Narrowness–Need–Intrusiveness findings to withstand a challenge under § 3626(b)(2)." *Id.*[9] As a result of the termination of the prior Orders, the only operative Order for prospective relief in the Golden Grove Litigation—and for purposes of Plaintiff's request for a three-judge court—is the parties' Settlement Agreement that was entered as an Order of the Court on May 14, 2013. Thus, to satisfy the second prerequisite for a three-judge court, the defendants in the Golden Grove Litigation must have had a reasonable amount of time to comply with the 2013 Order. The Court concludes that they have not.

Plaintiff cites the Supreme Court's decision in *Brown v. Plata* in support of a contrary conclusion. In *Brown*, the Supreme Court upheld two separate decisions to convene a three-judge court under 18 U.S.C. § 3626(a)(3). *Brown*, 131 S. Ct. at 1932. The original decisions to convene a three-judge court were made in two class action lawsuits against California prisons. *Id.* at 1922.

---

[9] Under 18 U.S.C. § 3626(b)(2), a defendant "shall be entitled to the immediate termination of any prospective relief if the relief was approved or granted in the absence of a finding by the court that the relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right." 18 U.S.C. § 3626(b)(2).

The first, *Coleman v. Brown*, involved a class of prisoners with serious mental disorders. *Id.* The second, *Plata v. Brown*, involved a class of prisoners with serious medical disorders. *Id.* After the separate district courts in each class action entered orders convening a three-judge court, the two class actions were consolidated. *Id.* at 1922, 1928.

In *Coleman*, the district court convened the three-judge court 12 years after the entry of an order for less intrusive relief. *Id.* at 1931. In *Plata*, the district court convened the three-judge court five years after the entry of an order for less intrusive relief. *Id.* The Supreme Court found each period of time was sufficiently long to satisfy the second prerequisite for convening a three-judge court. In so holding, the Supreme Court reasoned that:

> When a court attempts to remedy an entrenched constitutional violation through reform of a complex institution, such as this statewide prison system, it may be necessary in the ordinary course to issue multiple orders directing and adjusting ongoing remedial efforts. Each new order must be given a reasonable time to succeed, but reasonableness must be assessed in light of the entire history of the court's remedial efforts.

*Id.* The Supreme Court went on to note that each district court's decision to convene a three-judge court was further supported by the continuing constitutional violations and the "solid basis to doubt" that these violations would be remedied by the existing orders. *Id.* at 1931-32.

Here, the Court concludes that the defendants have not yet "had a reasonable amount of time to comply with the [2013 Order.]" *See* 18 U.S.C. § 3626(a). The 2013 Order seeks systemic reform of a complex institution and requires broad improvements encompassing the categories of safety and supervision, medical and mental health care, fire and life safety, and environmental health and safety. (Dkt. No. 16-1). The 2013 Order was entered in May, the Monitor was appointed in June, and the first monitoring report assessing Golden Grove's compliance with the 2013 Order was released in December of 2013. Monitor's Baseline Compliance Assessment Report, *Territory of the Virgin Islands*, Civ. No. 1986-265 (D.V.I. Dec. 3, 2013) (Dkt. No. 755). Given the 2013

Order's broad scope and the fact that less than two and a half years have elapsed since the Monitor provided his baseline assessment report, the Court finds that there has not been a reasonable amount of time to comply with the 2013 Order.

The Court's conclusion is further supported when the time that has passed since the 2013 Order is "assessed in light of the entire history of the court's remedial efforts." *Brown*, 131 S. Ct. at 1931. Unlike the situations in *Brown* in which the district courts had a "solid basis to doubt" that the constitutional violations would be addressed pursuant to exiting court orders, the defendants in the Golden Grove Litigation are starting to make positive strides toward compliance, notwithstanding that much more work is left to be done. In this regard, the most recent monitoring report submitted on February 21, 2016, which addressed the last site visit in December 2015, notes that the status of several medical/mental health conditions at Golden Grove improved to "partial compliance." Tenth Compliance Monitoring Report at 4, *United States v. Territory of the Virgin Islands, et al.*, Civ. No. 1986-0265 (D.V.I. Feb. 22, 2016) (Dkt. No. 957). Training on medical and mental health policies and procedures is ongoing and expected to be completed in August 2016. *See* Joint Motion for Entry of Stipulated Order at 3, *Territory of the Virgin Islands, et al.*, Civ. No. 1986-0265 (D.V.I. June 16, 2015) (Dkt. No. 923-1); Order, *Territory of the Virgin Islands, et al.*, Civ. No. 1986-0265 (D.V.I. June 16, 2015) (Dkt. No. 924). The Monitor also notes in his February 2016 Report that there continues to be active collaboration with the Territory aimed at achieving "final approval of all security and safety-related policies and procedures." Tenth Compliance Monitoring Report at 5-6, *United States v. Territory of the Virgin Islands, et al.*, Civ. No. 1986-0265 (D.V.I. Feb. 22, 2016) (Dkt. No. 957). Training on these policies and procedures will follow. Finally, regarding the requirement to improve staffing—a critical component of meeting compliance with all of the 2013 Order's requirements, including increasing inmate security—the parties in the Golden Grove Litigation are in the process of finalizing a plan that is expected to

cover a five-year period ending in 2020. *See* Notice of Filing Defendants' Security Staffing and Recruitment Plan, *Territory of the Virgin Islands, et al.*, Civ. No. 1986-0265 (D.V.I. Jan. 7, 2016) (Dkt. No. 950-1).[10] Accordingly, this Court cannot find that, as of March 2016, the defendants have had "a reasonable amount of time to comply with the [2013 Order]." *See* 18 U.S.C. § 3626(a).

To be sure, the defendants in the Golden Grove Litigation have not always complied with the deadlines imposed pursuant to the 2013 Order and, while Golden Grove has advanced in some areas, there are many conditions at Golden Grove that still require significant improvements. If there is to come a day when the defendants in the Golden Grove Litigation remain noncompliant with the 2013 Order despite having a reasonable period of time to remedy the constitutional violations, that day has not yet come.

## IV. CONCLUSION

In view of the foregoing, Plaintiff has failed to demonstrate that the two prerequisites for convening a three-judge court have been satisfied. In particular, Plaintiff's claims regarding denial of adequate medical care, failure to protect from suicidal action, and violations of the ADA and Rehabilitation Act fail under the first prerequisite set forth in 18 U.S.C. § 3626(a)(3)(A)(i). There is no prior court order for less intrusive relief that has failed to remedy the deprivation of alleged Federal rights for which Plaintiff now seeks a prisoner release order. Plaintiff's claims for failure to protect from attack and inadequate training or supervision fail under the second prerequisite set forth in 18 U.S.C. § 3626(a)(3)(A)(ii). Defendants have not had a reasonable amount of time to comply with the Court's 2013 Order issued in the Golden Grove Litigation in view of the systemic reform that is required.

---

[10] Section IV.D.1 of the Settlement Agreement requires defendants to "develop and submit to USDOJ and the Monitor for review and approval . . . a staffing plan that provide[s] for adequate staff to implement [the Settlement] Agreement." (Dkt. No. 16-1 at 5).

Accordingly, it is hereby

**ORDERED** that Plaintiff's "Motion to Convene Three Judge Panel" is **DENIED**.

**SO ORDERED.**

Date: March 4, 2016  _____/s/_____
WILMA A. LEWIS
Chief Judge