<table>
<tr><td colspan="2" align="center"><b>DISTRICT COURT OF THE VIRGIN ISLANDS<br><br>DIVISION OF ST. CROIX</b></td></tr>
</table>

| | |
|---|---|
| **RONALD E. GILLETTE,** | |
| **Plaintiff,** | **1:14-cv-00110** |
| **v.** | |
| **DIANE PROSPER, Warden of the Golden Grove Adult Correctional Facility, in her individual and official capacities; JULIUS WILSON, Director of the Virgin Islands Bureau of Corrections, in his individual and official capacities; and TERRITORY OF THE VIRGIN ISLANDS,** | |
| **Defendants.** | |

**Attorneys:**
**Joseph A. DiRuzzo, III, Esq.**
Miami, FL
        *For Plaintiff*

**Shari N. D'Andrade, Esq.**
St. Croix, VI
        *For Defendants*

## <u>REPORT AND RECOMMENDATION</u>

THIS MATTER is before the Court upon the Order (ECF No. 60) of Chief Judge Wilma A. Lewis in Civil No. 14-00110 referring Territorial Defendants' Motion for Judgment on the Pleadings (ECF No. 27), Plaintiff's Motion for Preliminary Injunction (ECF No. 14), Plaintiff's Motion to File an Over-Length Brief (ECF No. 15), Plaintiff's Motion to Strike Affirmative Defenses (ECF No. 23), and Plaintiff's Motion[s] to Take Judicial Notice (ECF Nos. 20, 40, and 48) to the undersigned for a report and recommendation.

*Gillette v. Prosper*
1:14-cv-00110
Report and Recommendation
Page 2

## I. BACKGROUND

In the spring of 2007, in response to a tip, the U.S. Marshals looked into the residency of Ronald Edward Gillette (Gillette). The Marshals confirmed that Gillette was living in St. Croix and thereafter arrested him, believing he was violating federal laws by failing to register as a sex offender. *United States v. Gillette*, 738 F.3d 63, 67 (3d Cir. 2013), *cert. denied, Gillette v. United States*, 134 S. Ct. 2714 (2014). When Gillette was arrested, a fifteen-year old boy was with him. An interview with the boy revealed that he had lived with Gillette for three years, during which time "the two had been sexually involved." *Id.* at 68. An investigation ensued and that summer Gillette was indicted on various sex-offenses. A grand jury convened in the fall from which a superseding indictment issued charging Gillette with two counts under federal laws for failing to register as a sex offender and twenty-eight sex-offense related counts under Virgin Islands laws. Thereafter Gillette was tried in the District Court where a jury found him guilty on twenty of the thirty charges. Gillette timely appealed, the Third Circuit Court of Appeals affirmed Gillette's judgment and sentence, and on June 2, 2014, his writ of certiorari to the United States Supreme Court was denied. *Gillette v. United States*, 134 S. Ct. 2714 (2014).[1]

---

[1] Gillette's post-conviction litigation history is significant and ongoing. *See*, Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct a Sentence by a Person in Federal Custody, 1:09-cv-00037 (ECF No. 1); Motion for Extraordinary Writ of Habeas Corpus, 1:07-cr-00050 (ECF No. 353) and 1:10-cv-00064; Petition for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241, 1:12-cv-00010 (ECF No. 1) and *Gillette v. Territory of the Virgin Islands*, 563 Fed. App'x 191 (3d Cir. 2014); Petition for Writ of Habeas Corpus, Superior Court Case No. SX-14-CV-439, *Gillette v. Trotter*, 2016 V.I. LEXIS 23 (Super. Ct. Mar. 21, 2016) and Notice of Removal, 1:17-cv-00042 (ECF No. 1); Petition for Writ of Habeas Corpus Pursuant to 5 V.I.C. § 1301, et seq., 48 U.S.C. § 1561 or in the alternative Motion to Vacate Pursuant to 28 U.S.C. § 2255, 1:07-cr-00050 (ECF No. 446); Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody, 3:16-cv-00096 (ECF No. 1); Petition for

*Gillette v. Prosper*
1:14-cv-00110
Report and Recommendation
Page 3

Gillette filed the instant Complaint on December 16, 2014, amending the caption on

March 3, 2015.[2] (ECF Nos. 1, 13). Gillette has since been transferred out of Golden Grove to

a mainland prison.[3] He has therefore, with the exception of a monetary award, received the

relief he requested. That reality notwithstanding, Gillette's Complaint fails to state a claim

upon which relief may be granted and therefore, the Territorial Defendants' Motion for

Judgment on the Pleadings (ECF No. 27) must be granted.[4]

## II. APPLICABLE LEGAL PRINCIPLES

A defendant's motion for judgment on the pleadings must be granted if the court

finds that the complaint does not state facts sufficient to constitute a cause of action against

the defendant.

Rule 12(c) provides in full: "Motion for Judgment on the Pleadings. After the

pleadings are closed—but early enough not to delay trial—a party may move for judgment

on the pleadings." Fed. R. Civ. P. 12(c).

---

Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 and Motion to proceed *In Forma Pauperis*, 1:17-cv-00004 (ECF Nos. 1 and 2); Motion to Intervene, 1:86-cv-00265 (ECF No. 677) and *United States v. Territory of Virgin Islands*, 748 F.3d 514 (3d Cir. 2014).

[2] "This First Amended Complaint corrects the caption to indicate that the individual Defendants are being sued in both their official and individual capacities. Other than correcting the caption nothing in the body of the First Amended Complaint differs from the original Complaint." (ECF No. 13) at 1.

[3] Gillette is currently (as of March 6, 2018) housed in "Protective Custody" at CoreCivic's Tallahatchie County Correctional Facility in Tutwiler, Mississippi. *See* 1:17-cv-00004 (ECF No. 43).

[4] On April 10, 2015, Gillette voluntarily dismissed Eric Holder as a defendant in this action. (ECF No. 32). Defendants' motion asserts that Plaintiff failed to exhaust his administrative remedies, that Plaintiff lacks standing because his Complaint fails to allege any injury to Plaintiff, and that all of the allegations in his Complaint fail to state a claim.

*Gillette v. Prosper*
1:14-cv-00110
Report and Recommendation
Page 4

Rule 12(h)(2) provides in pertinent part: "[f]ailure to state a claim upon which relief can be granted . . . may be raised: . . . (B) by a motion under Rule 12(c) . . . ." Fed. R. Civ. P. 12(h)(2)(B).

To establish a cause of action or state a claim for relief, a plaintiff must plead facts with particularity. A complaint must be dismissed if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Cuffie v. Macy's* 2017 U.S. Dist. LEXIS 104371, at *5 (W.D. Pa. July 5, 2017) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). "[A] complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009). *See also Reichart v. Luzerne County Facility's Med. Dep't*, 2016 U.S. Dist. LEXIS 116572, at *7-8 (M.D. Pa. Aug. 29, 2016); *Morse v. Lower Merion School Dist.*, 132 F.3d 902, 906 (3d Cir. 1997); *Associated Gen. Contractors of Cal. v. California State Council of Carpenters*, 459 U.S. 519, 526 (1983)). A well-pleaded complaint includes clearly stated claims and facts to support those claims. *Bell Atlantic*, 550 U.S. at 555."[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Gloria Sun Jung v. Bank of Am., N.A.*, 2016 U.S. Dist. LEXIS 102247, at *7 (M.D. Pa Aug. 2, 2016) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *Gumbs v. Penn*,

*Gillette v. Prosper*
1:14-cv-00110
Report and Recommendation
Page 5

2017 U.S. Dist. LEXIS 42916 at *6 (D.V.I. Mar. 24, 2017) (citing *West v. Atkins*, 487 U.S. 42,

48 (U.S. 1988).

### III. PLAINTIFF'S COMPLAINT

Gillette brings twenty-two claims under 42 U.S.C. § 1983, *Bivens v. Six Unknown*

*Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388 (1971), Section 504 of the

Rehabilitation Act, and the Americans with Disabilities Act (ADA).

In counts 1-5, Gillette alleges that the defendants have denied him medical care

because he "has yet to receive medical treatment in connection with the physical and

mental issues that this prior [brain] injury has posed." Complaint (ECF No. 1) at ¶ 52. And,

because he has not been "placed in an institution where he [will receive a] full medical,

psychiatric and neurological evaluation in order to assess brain functioning." *Id.* at ¶ 58.

In counts 6-10, Gillette alleges that the defendants failed to protect him from the

risk of attack because there was "a substantial risk that Plaintiff would be attacked by

another inmate or guard." *Id.* at ¶ 384 and pp. 57-66.

In counts 11-15, Gillette alleges that the defendants' failure to adequately train and

supervise their employees "amount[s] to deliberate indifference to the fact that inaction

would obviously result in a violation of Plaintiff's Eighth Amendment and statutory rights. "

*Id.* at ¶ 440 and pp. 66-73. Plaintiff states that these counts arise out of a "policy of

inadequate training or supervision" and a history of Golden Grove employees mishandling

prisoner misconduct "situations." *Id.*

*Gillette v. Prosper*
1:14-cv-00110
Report and Recommendation
Page 6

In counts 16-20, Gillette alleges that the defendants failed to protect him from suicidal action because he has a "particular vulnerability to suicide," has a history of "suicidal ideation and intent," and had previously been "placed on suicide watch on August 21, 2007, after ingesting a series of pills." *Id.* at ¶ 494, pp. 74-81, and ¶ 60.

In counts 21 and 22, Plaintiff alleges that the defendants discriminated against him when they excluded him from participation in "services, programs, or activities" and when they failed to accommodate his "heat-sensitive disabilities" by refusing to protect him from extreme temperatures. *Id.* at ¶¶ 543, 545 and pp. 81-84.

On all counts, Gillette moves the court for the following relief:

(1) issue an Order declaring that the conditions at Golden Grove violate the Eighth Amendment of the United States Constitution and 48 U.S.C. § 1561; (2) grant injunctive relief ordering Plaintiff be discharged from the detention and restraint at Golden Grove; or (3) in the alternative, order that the Defendants transfer the Plaintiff to another facility that comports with the Eighth Amendment of the United States Constitution and 48 U.S.C. § 1561; and (4) grant such other and further relief as this Court should deem reasonable and just.

Complaint (ECF No. 1).[5] He also seeks compensatory monetary damages from the defendants, "dating from the start of Plaintiff's incarceration for their intentional violation of Plaintiff's constitutional and statutory rights." *Id.*[6]

The bulk of Plaintiff's Complaint is composed of quotes from court filings in Civil No. 86-265, including compliance monitoring reports, in relation to the Settlement Agreement

---

[5] at pp. 48, 50, 52, 55, 57, 59, 60, 62, 64, 66, 67, 69, 70, 72, 73, 75, 76, 77, 79, 81, 82, and 84.
[6] at pp. 51, 57, 61, 66, 69, 73, 76, and 81.

*Gillette v. Prosper*
1:14-cv-00110
Report and Recommendation
Page 7

entered into between the United States and the Virgin Islands with respect to prison

conditions at Golden Grove. Plaintiff's Complaint includes ten exhibits that reference

Golden Grove prison conditions generally, two exhibits that speak to the effects of

excessive heat on humans, and four exhibits that reference Plaintiff, specifically.[7]

### A. Exhaustion of Administrative Remedies

"No action shall be brought with respect to prison conditions under Section 1983 of

this title, or any other Federal law, by a prisoner confined in any jail, prison, or other

correctional facility until such administrative remedies as are available are exhausted." 42

---

[7] Exhibit 1: The United States' Proposed Findings of Fact and Conclusions of Law in Support of Settlement Agreement and Defendants' Notice of Non-Opposition to United States' Proposed Findings of Fact and Conclusions of Law in support of Settlement Agreement and Consent to Court's Adoption.
Exhibit 2: Monitor's Baseline Compliance Assessment Report.
Exhibit 3: Memorandum of Points and Authorities in Support of United States' Motion for Appointment of a Receiver Pursuant to Fed. Civ. P. 66 and this Court's Equity Jurisdiction.
Exhibit 4: Competency Consultation Evaluation Report Re: Ronald E. Gillette.
Exhibit 5: Letter from Dr. Maria T. Margarida Julia to Joseph A. DiRuzzo, Esq.
Exhibit 6: Report to Third Circuit Concerning Defendant Ronald Gillette's Competency to Withdraw his Appeal. Criminal No. 2007-50.
Exhibit 7: Joy Blackburn, *Warden Tells Senators Prison Beset by Array of Issues*, VIRGIN ISLANDS DAILY NEWS, July 19, 2013.
Exhibit 8: Memorandum Opinion Denying Gillette's Motion for Leave to Intervene in Civil No. 86-265, entered November 7, 2012.
Exhibit 9: Kenneth A. Ray, M.Ed., *Fourth Compliance Monitoring Report*, 2013 Federal Court Settlement Agreement, In re: *United States of America v. The Territory of the Virgin Islands* (86/265), Sept. 1, 2014.
Exhibit 10: Kenneth A. Ray, M.Ed., *Fifth Compliance Monitoring Report*, 2013 Federal Court Settlement Agreement, In re: *United States of America v. The Territory of the Virgin Islands* (86/265), Nov. 28, 2014.
Exhibit 11: *Sources Say Several Prisoners Beaten at Golden Grove*, ST. CROIX SOURCE, Nov. 12, 2014.
Exhibit 12: Bill Kossler, *BOC Director Says Prisoner Assaulted Officer, Lied About Being Beaten*, ST. THOMAS SOURCE, Nov. 13, 2014.
Exhibit 13: Joy Blackburn, *Report Details how Prisoner was Able to Escape*, VIRGIN ISLANDS DAILY NEWS, Sept. 15, 2014.
Exhibit 14: *Beat the Heat Weather Ready Nation Campaign*, National Weather Service Office of Climate, Water, and Weather Services, www.nws.noaa.gov.
Exhibit 15: *NIOSH Fast Facts: Protecting Yourself from Heat Stress*, www.cdc.gov.
Exhibit 16: Virgin Islands Bureau of Corrections Incident Reports concerning the death of inmate Adrien Wheatley on July 9, 2011.

*Gillette v. Prosper*
1:14-cv-00110
Report and Recommendation
Page 8

U.S.C. § 1997e(a). This exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532.

Plaintiff claims that the exhaustion requirement does not apply to him because there is no mechanism at Golden Grove by which to file a complaint. Complaint (ECF No. 1) at ¶ 10 ("Because the conditions at Golden Grove are so dire and pose an immediate and continuous danger to the Plaintiff, no administrative remedy exists that could remedy Plaintiff's unlawful detention."). Plaintiff's Complaint shows that this assertion is factually incorrect. "Although complaint forms are available to inmates, there is no system established to ensure that complaints are resolved, followed-up, and/or monitored." Complaint (ECF No. 1) at ¶ 150. "Current practices also differ among unit officers, according to inmate and staff interviews. Some officers allow free access to complaint forms, others state they attempt to resolve matters informally before issuing a form, still others require all completed complaint forms to be submitted by the inmate to the officers for further processing." *Id.* at ¶ 151. The mechanisms may be informal and they may be imperfect, nonetheless, there are mechanisms available for Golden Grove prisoners to express a concern, complaint, or grievance, and to request medical care. Plaintiff's Complaint includes no evidence that he informed anyone of his concerns prior to filing a lawsuit. Quoting one of the monitoring reports, Plaintiff states, "[m]any of the boxes used to collect complaints and sick requests at the housing units were found unlocked and/or broken." *Id.* at ¶ 154 But makes no connection as to how this observation made by

*Gillette v. Prosper*
1:14-cv-00110
Report and Recommendation
Page 9

compliance monitors impacted him. Did he place a complaint in the box? Did he place a sick

request in the box? Did he verbally request an appointment for medical care? Did he mail a

letter to the warden? Plaintiff's Complaint is devoid of any action he took to resolve his

issues or have his complaints addressed prior to prevailing upon the Court.

**B. Counts 1-5: Denial of Adequate Medical Care**

An Eighth Amendment claim for inadequate medical care "must allege acts or

omissions sufficiently harmful to evidence deliberate indifference to serious medical

needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). To show deliberate indifference, "a

plaintiff must make (1) a subjective showing that 'the defendants were deliberately

indifferent to [his] medical needs' and (2) an objective showing that 'those needs were

serious.'" *Pearson v. Prison Health Svc.,* 850 F.3d 526, 534 (3d Cir. 2017) (*quoting Rouse v.

Plantier*, 182 F.3d 192, 197 (3d Cir. 1999)).

The Third Circuit Court of Appeals "has found deliberate indifference in a variety of

contexts including where...knowledge of the need for medical care is accompanied by the

intentional refusal to provide it...[and where] prison authorities prevent an inmate from

receiving recommended treatment for serious medical needs." *Harris v. Poska*, 2018 U.S.

App. LEXIS 7163 at *5-6 (quoting *Pearson*, 850 F.3d at 538).

At paragraph 3 of his Complaint, Gillette states, "[a] s *set forth fully herein*, GILLETTE

is being held unlawfully in that he is being subjected to cruel and unusual punishment due

to the failure to provide constitutionally mandated medical and mental health treatment,

and for being subject to the deplorable conditions of Golden Grove, which also violates the

*Gillette v. Prosper*
1:14-cv-00110
Report and Recommendation
Page 10

ADA." Complaint (ECF No. 1) at ¶ 3 (italics added). At paragraph 308, he states, "Plaintiff had, and continues to have, serious medical needs, *as set forth fully above*." Complaint (ECF No. 1) at ¶ 308 (italics added). However, the paragraphs in between these two statements provide few facts as to what Gillette's serious medical needs are, when he was denied medical treatment and by whom, and the harm he believes he suffered. For example, paragraphs 4-7, 9-10, 36-39, 46-48, and 61-302 refer to general prison conditions at Golden Grove as identified and detailed in the Settlement Agreement in Civil Number 86-265 (DV.I.) and documents related to that action. Gillette refers to court documents, compliance monitor reports, and newspaper reports, none of which provide facts that allege any harm suffered by Gillette.

Gillette's allegations that he has serious medical needs include:

(1) "Plaintiff has been suffering from various physical ailments pre-dating his confinement, including an injury to his brain that resulted in the growth of a cyst in the affected area." Complaint (ECF No. 1) at ¶ 50.

(2) "As a result of this injury, Plaintiff had a shunt implanted to relieve the pressure on his brain." Complaint (ECF No. 1) at ¶ 50.

(3) Gillette ambulates in a "wheel chair which he has been using since approximately 2009 after a neurological event for which he was hospitalization (sic) while at the Metropolitan Detention Center in Guaynabo, Puerto Rico." Exhibit No. 4 (ECF No. 1-4) at 5.

*Gillette v. Prosper*
1:14-cv-00110
Report and Recommendation
Page 11

(4) "The results of the present evaluation revealed Mr. Gillette shows evidence of Mild Cognitive Impairment (MCI) probably associated with surgical removal of brain cyst and posterior neurological difficulties which have resulted in cognitive changes, memory loss and vestibular, balance problems." Exhibit No. 4 (ECF No. 1-4) at 9.

Gillette's assertion that he "needs urgent medical care due to his neurological condition which is not being addressed at his present institution due to lack of adequate medical services," Exhibit No. 5 (ECF No. 1-5) at 1, is not factually supported in his Complaint. As shown above, the Complaint does not include facts that show he is in need of urgent medical care, nor does it allege any facts that show his condition has deteriorated since entering Golden Grove prison. For proof of his claim, Gillette relies on Dr. Margarida Julia's letter, in which she writes that Plaintiff "needs urgent medical care due to his neurological condition which is not being addressed at his present institution due to lack of adequate medical services" and that if left untreated, "[p]otential neurological deterioration could result in further exacerbation of his mild cognitive impatient into a full blown degenerative dementia . . . ." Exhibit 5 (ECF No. 1-5). Dr. Margarida Julia evaluated Gillette in the summer of 2011. Her letter is dated January 24, 2012. The one-paragraph letter is a restatement of her August 7, 2011 findings. There is nothing to indicate she had any contact with the Plaintiff, Golden Grove prison medical staff, or any of the defendants between the time of her initial assessment and writing the letter. Also, there is nothing to indicate that her conclusions that Gillette's neurological condition is not being addressed at Golden Grove and that Golden Grove lacks adequate medical services are based on her

personal observations. For example, she conducted her evaluation of Gillette at Golden

Grove "in a private conference room," Exhibit 4 (ECF No. 1-4) at 2, making no mention of

visiting the prison medical facilities.

Gillette fails to allege that any defendant was deliberately indifferent to his medical

needs. He avers to a general lack of medical services at Golden Grove by way of documents

and reports related to the Settlement Agreement, but does not present facts specific to his

medical care or lack thereof. He states that he "has yet to receive medical treatment in

connection with the physical and mental issues that this prior injury has posed." Complaint

(ECF No. 1) at ¶ 52. But alleges no harm as a result. According to Gillette, "Dr. Margarida

Julia recommended that "[Plaintiff] be placed in an institution where he receives full

medical, psychiatric and neurological evaluation in order to assess brain functioning which

has not been addressed since the removal of the shunt to alleviate the pressure from a

brain cyst." Complaint (ECF No. 1) at ¶ 58. However, Gillette alleges no facts showing that

the defendants' alleged failure to treat his general medical and psychiatric needs was

deliberately indifferent as opposed to merely negligent or based on a difference of medical

opinion. See *Estelle*, 429 U.S. at 106 (allegation of negligence does not state Eighth

Amendment claim); *see also Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004) (allegations of

medical malpractice not sufficient for Eighth Amendment claim) (citations omitted).

### C. Counts 6-10: Failure to Protect from Attack

A prison official's "deliberate indifference" to a substantial risk of serious harm to an

inmate violates the Eighth Amendment. *Farmer v. Brennan*, 511 U.S. 825, 828 (1994)

*Gillette v. Prosper*
1:14-cv-00110
Report and Recommendation
Page 13

(citations omitted). Deliberate indifference requires "a showing that the official was subjectively aware of the risk" and chose to disregard that risk. *Id. See also Millbrook v. United States*, 714 Fed. Appx. 109, 114 (3d Cir. 2017).

Plaintiff's Complaint details acts of violence that have allegedly been perpetrated by inmates against other inmates and by guards against inmates. Plaintiff does not state that he was a victim of any of the alleged incidents, he does not state that he witnessed any incidents, his Complaint does not show that he was in the vicinity, such as being in the same cell or the same unit of any of the alleged incidents. He has alleged no facts that show he is in imminent risk of physical harm nor does he allege any facts showing that he has been harmed because one of the defendants failed to protect him.

### D. Counts 11-15: Liability through Inadequate Training or Supervision

To state a claim for failure to train, "a plaintiff must (1) identify with particularity what the supervisory officials failed to do that demonstrates deliberate indifference and (2) demonstrate a close causal link between the alleged failure and the alleged injury." *Coleman v. Wetzel*, 2015 U.S. Dist. LEXIS 172587 at *23 (M.D. Pa. Dec. 28, 2015) (quoting *Daniels v. Delaware*, 120 F. Supp. 2d 411, 423 (D. Del. Sept. 29, 2000) "[T]he inadequacy of . . . training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the [inadequately trained subordinates] come into contact." *City of Canton v. Harris*, 489 U.S. 378, 388 (1989).

*Gillette v. Prosper*
1:14-cv-00110
Report and Recommendation
Page 14

> To state a claim for failure to supervise, a plaintiff must:

> identify a supervisory policy or practice that the supervisor failed to employ, and then prove that: (1) the policy or procedures in effect at the time of the alleged injury created an unreasonable risk of a constitutional violation; (2) the defendant-official was aware that the policy created an unreasonable risk; (3) the defendant was indifferent to that risk; and (4) the constitutional injury was caused by the failure to implement the supervisory practice or procedure.

*Fox v. Bayside State Prison*, 2018 U.S. App. LEXIS 5373 at *4-5 (3d Cir. 2018)(quoting *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 317 (3d Cir. 2014), *rev'd on other grounds sub nom. Taylor v. Barkes*, 135 S. Ct. 2042 (2015) (per curiam)).

Here, Plaintiff does not allege that he has been harmed by the actions of a poorly trained or inadequately supervised prison employee, he avers that he might be harmed in the future. Plaintiff would like the Court to adopt the observations of the compliance monitor and the United States' Proposed Findings of Fact and Conclusions of Law in Support of Settlement Agreement in Civil No. 86-265, (ECF No. 1) Exhibits 1, 2, 3, 9, 10, as if the events and actions in those documents happened to him. Plaintiff alleges that the defendants' "failure to adequately train and adequate[ly] supervise amount to deliberate indifference to the fact that inaction would obviously result in a violation of Plaintiff's Eighth Amendment and 48 U.S.C. § 1561 rights." Complaint (ECF No. 1) at ¶ 472. He does not state what the alleged inaction is (or is not) nor where the alleged inaction took place, who engaged in the alleged inaction, and how Plaintiff was or would be harmed. He states further that the defendants "knew that Golden Grove employees would confront a particular situation giving rise to prisoner misconduct," that there is a history of prisoner

*Gillette v. Prosper*
1:14-cv-00110
Report and Recommendation
Page 15

misconduct at Golden Grove, and that Golden Grove employees have a history of

mishandling misconduct and making "the wrong decision." *Id.* at ¶¶ 473-75. But, again,

leaves the court guessing as to what the particular situation might be, what the conduct

might be, and how the employees will "mishandle" this future imagined situation.

"A pattern of similar constitutional violations by untrained employees is 'ordinarily

necessary' to demonstrate deliberate indifference for purposes of failure to train." *Connick*

*v. Thompson*, 563 U.S. 51, 62 (2011). Plaintiff provides a list of alleged inmate violations

regarding possession of contraband, a single allegation of prisoners being beaten by

guards, and two events of alleged inmate assault one of which resulted in the death of one

of the inmates. However, he cites no specific policy, averring that generally, Golden Grove

employees are not well-trained. Plaintiff attempts to show that the alleged lack of training

is evidenced by the amount contraband seized at Golden Grove. In his Complaint he

includes a chart[8] that shows the type of contraband—cell phones, music and movie players,

drugs, weapons, etc.— and the number of items seized but he includes no comparison to

contraband identification and seizure at other prisons of similar size and population.

Which again puts the Court in the position of guessing, or drawing conclusions from

incomplete information. It is evident from Plaintiff's Complaint that he would like the Court

to believe that there is not a single aspect of prison management that is not mishandled at

Golden Grove and, that all of Plaintiff's allegations are proved by the existence of the

---

[8] Complaint (ECF No. 1) at ¶ 110.

*Gillette v. Prosper*
1:14-cv-00110
Report and Recommendation
Page 16

Settlement Agreement and collateral documents. However, this information provides only conclusory statements. Plaintiff's Complaint lacks well-pled factual allegations that "plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679.

Once again, Plaintiff alleges that he might at some point in the future be harmed. Plaintiff's conclusory allegation that the defendants "knew that Golden Grove employees would confront a particular situation giving rise to prisoner misconduct" is insufficient to support a finding of deliberate indifference. Complaint (ECF No. 1) at ¶ 441 and *see Iqbal*, 556 U.S. at 678. Even where "specific policies do not comport with best practices in prison operations" and even where there is a "consent decree" which addresses training and policies, "these shortcomings do not meet the high standard of actual knowledge that is required to show deliberate indifference." *Coleman v. Wetzel*, 2015 U.S. Dist. LEXIS 172587 at *21-22 (M.D. Pa. Dec. 28, 2015) ("Plaintiff does not allege any facts upon which the Court could conclude that Defendants knew that the policy of assigning non-violent inmates to cell with violent inmates posed an unreasonable risk of harm") (citing *Beers-Capitol v. Whetzel*, 256 F.3d 120, 137-38 (3d Cir. 2001) and *Heggenmiller v. Edna Mahan Corr. Inst. for Women*, 128 F. App'x 240, 247 (3d Cir. 2005)). Like *Coleman's* consent decree, here there is a settlement agreement that requires Golden Grove to address many issues including safety, supervision, training, and security and, like *Coleman*, the shortcomings identified in the Golden Grove Settlement Agreement "do not meet the high standard of actual knowledge that is required to show deliberate indifference." *Id.*

*Gillette v. Prosper*
1:14-cv-00110
Report and Recommendation
Page 17

### E. Counts 16-20: Failure to Protect from Suicidal Action

In support of this claim, Gillette refers to Dr. Margarida Julia's report, which states that "a review of the medical record from Metropolitan Detention Center (MDC), Guaynado, Puerto Rico, reflected that [Plaintiff] had a history of suicidal ideation and intent while at the institution, and was placed on suicide watch on August 21, 2007, after ingesting a series of pills." Complaint (ECF No. 1) at ¶ 60.

The same standard, "deliberate indifference," that applies to denial of medical care applies to cases of inmate suicide. Further, "if [custodial] officials know or should know of the particular vulnerability to suicide of an inmate, then the Fourteenth Amendment imposes on them an obligation not to act with reckless indifference to that vulnerability." *Colburn v. Upper Darby Township*, 838 F.2d 663, 669 (3d Cir. 1988) *see also Partridge v. Two Unknown Police Officers of Houston*, 791 F.2d 1182, 1187 (5th Cir. 1986) (regarding pretrial detainee's suicide, "the defendants had a duty, at a minimum, not to be deliberately indifferent to [the detainee's] serious medical needs").

Plaintiff's Complaint was filed seven years after Plaintiff was allegedly placed on suicide watch. Plaintiff makes no showing that he has since attempted suicide or has, since that event, been placed on suicide watch, an indication that contrary to Plaintiff's assertion, Golden Grove prison has protected him from suicidal action. Plaintiff avers that at Golden Grove the mental health "intake process is flawed" that "staffing is inadequate," and that wait times to see a mental health professional could be up to a year. Complaint (ECF No. 1) at pp. 31-40. Plaintiff avers that these and other Golden Grove provision-of-services

*Gillette v. Prosper*
1:14-cv-00110
Report and Recommendation
Page 18

deficiencies listed in Exhibit 2 result in deprivation of "adequate medical care resulting in obvious danger to his mental health." *Id.* at ¶ 312. However, beyond reciting the observations made by the compliance monitor and reported in the Monitor's Baseline Compliance Assessment Report, Exhibit 2 (ECF No. 1-2), Plaintiff provides no facts as to when he was deprived of mental health care, who denied him care, when the care was denied, and how he was harmed. In short, he has failed to state a claim.

**F. Count 21: Americans with Disabilities Act and Count 22: § 504 of the Rehabilitation Act**

The ADA applies to prisons and "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. *See also Pa. Dep't of Corrs. v. Yeskey*, 524 U.S. 206 (1998). To successfully state an ADA claim, a person "must demonstrate: (1) he is a qualified individual; (2) with a disability; (3) [who] was excluded from participation in or denied the benefits of the services, programs, or activities of a public entity, or was subjected to discrimination by any such entity; (4) by reason of his disability." *Haberle v. Troxell*, 885 F.3d 171, 178 (3d. Cir. 2018) (quoting *Bowers v. NCAA*, 475 F.3d 524, 553 n.32 (3d Cir. 2007)).

Gillette alleges that being subject "to the deplorable conditions of Golden Grove" violates the ADA. Complaint (ECF No. 1) at ¶ 3. He also states that Golden Grove failed to reasonably accommodate his heat-related medical issue and that he was prevented from

*Gillette v. Prosper*
1:14-cv-00110
Report and Recommendation
Page 19

participating in "services, programs, or activities." Here, Gillette restates the law with no

supporting facts. Again he provides general information gleaned from Golden Grove

litigation documents and the compliance monitor reports thereof. He fails to specify what

service, program, or activity he was excluded from, how he was excluded, and who

excluded him. As to his heat-stress claim, he fails to allege any facts that show when he was

exposed to excessive heat and how that exposure harmed him.

### G. Compensatory Damages: Diane Prosper and Julius Wilson

To state a claim against a defendant in his or her individual capacity under § 1983, a

plaintiff must allege that the defendant was personally involved in the events or

occurrences on which plaintiff's claims are based. *Rode v. Dellarciprete*, 845 F.2d 1195,

1207 (3d Cir. 1988). Allegations must be made with appropriate particularity. *Id.* To state a

claim against an official in his or her individual capacity, a plaintiff must show a causal

connection between the defendant, the alleged harm, and the plaintiff. "[A] plaintiff must

plead that each Government-official defendant, through the official's own individual

actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

In his Complaint, Gillette alleges that Prosper and Wilson: (1) "were deliberately

indifferent to Plaintiff's serious medical needs;" (2) "knew, or should have known, of

Plaintiff's serious medical needs and failed (and continue to fail) to act;" (3) "fail[ed] to

provide Plaintiff the adequate medical care that he requires to treat his serious physical

and psychological needs, caused, and continues to cause Plaintiff harm;" (4) "intentionally

deprived such adequate medical care resulting in obvious danger to his mental health;" and

*Gillette v. Prosper*
1:14-cv-00110
Report and Recommendation
Page 20

(5) "placed [Plaintiff] at risk because of the lack of health care and mental health care available at Golden Grove" and because of this, "is presently in danger of irreversible deterioration of both his physical and mental condition if he continues to be withheld the medical care demanded." Complaint (ECF No. 1) at 49-50.

All of these statements lack the factual foundation that tells the Court what actions each individual defendant took or failed to take and how, as a direct result, Gillette was harmed. While the Court must accept the factual allegations in a complaint as true, the court "[is] not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678. Gillette's statements do no more than "infer the mere possibility of misconduct." *Id.* at 679. Mere inferences fail to show "the pleader is entitled to relief." *Id*. By providing only conclusory statements, Gillette objectively fails to meet the pleading standard that is required to state a claim.

Gillette also alleges that at one time he had a shunt, that a competency examination by a clinical neuropsychologist concluded that he has mild cognitive impairment, that he ambulates using a wheelchair, and that "potential neurological deterioration could result in further exacerbation of his mild cognitive [impairment]." Exhibit 5 (ECF No. 1-5). He states further that at Golden Grove he has not received the medical care that his conditions demand. However, none of his alleged facts connect Prosper or Wilson to specific acts or omissions in relation to Gillette. Gillette's allegations fail to provide the basics of what the defendant did, where the defendant did it, and how the defendant's action or inaction harmed the plaintiff. Gillette simply does not provide sufficient factual allegations from

*Gillette v. Prosper*
1:14-cv-00110
Report and Recommendation
Page 21

which the Court may "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## IV. CONCLUSION

Based upon the foregoing, it is now hereby

**RECOMMENDED** that the Territorial Defendants' Motion for Judgment on the Pleadings (ECF No. 27) be **GRANTED**; it is further

**RECOMMENDED** that Plaintiff's Motion for Preliminary Injunction (ECF No. 14) be **DENIED as moot**; it is further

**RECOMMENDED** that Plaintiff's Motion to File an Over-Length Brief (ECF No. 15) be **DENIED as moot**; it is further

**RECOMMENDED** that Plaintiff's Motion to Take Judicial Notice (ECF No. 20) be **DENIED as moot**; it is further

**RECOMMENDED** that Plaintiff's Motion to Strike Affirmative Defenses (ECF No. 23) be **DENIED as moot**; it is further

**RECOMMENDED** that Plaintiff's Motion to Take Judicial Notice (ECF No. 40) be **DENIED as moot**; it is further

**RECOMMENDED** that Plaintiff's Motion to Take Judicial Notice (ECF No. 48) be **DENIED as moot**.

*Gillette v. Prosper*
1:14-cv-00110
Report and Recommendation
Page 22

Any objections to this Report and Recommendation must be filed in writing within fourteen (14) days of receipt of this notice. Failure to file objections within the specified time shall bar the aggrieved party from attacking such Report and Recommendation before the assigned District Court Judge. 28 U.S.C. § 636(b)(1); LRCi 72.3.

ENTER:

Dated: May 10, 2018                    /s/ George W. Cannon, Jr.
                                       GEORGE W. CANNON, JR.
                                       MAGISTRATE JUDGE